**WESSELL v. KITE (SOUTHERN FURNITURE CO., Intervener).**

No. 4219.

Court of Appeal of Louisiana. Second Circuit, Second Division.

June 11, 1932.

364

L. A. Newsom, of Shreveport, for appellant.

Edward Barnett, of Shreveport, for appellee.

### TALIAFERRO, J.

Plaintiff sued defendant for rent due on a lease of a building in the city of Shreveport and caused to be provisionally seized certain household effects, furniture, etc., found in the leased premises. Judgment was rendered on default for the amount sued for with recognition of the lessor's lien on the chattels provisionally seized, and in due course execution issued on the judgment and said chattels were seized and advertised for sale. Before the day of sale, the Southern Furniture Company intervened in the case and filed third opposition, wherein it is asserted and averred that certain parcels of the seized property were sold and delivered by it to Mrs. D. L. Kite, wife of defendant, on terms of credit, and chattel mortgages taken and recorded to secure payment of the price of same before delivery to the purchaser; and that its chattel mortgage lien was superior in rank to the plaintiff's rent claim as against this particular property. Intervener prayed for usual judgments against both plaintiff and defendant. The property involved in the intervention was separately appraised and separately sold by the sheriff, under order of court, and the proceeds held by that officer. This suit involves the right to said proceeds.

Plaintiff denies that the intervener has any mortgage or lien on the seized chattels and further avers, in effect, that, if defendant was originally indebted to intervener to the extent of $460, as alleged, and that $244.60 thereof had been paid, as admitted, by imputation of payments the chattel mortgage for $88.50, first one taken, had been extinguished, and the property described therein released from that mortgage; that by imputation of payments the second mortgage of $191.75 had been reduced to $39.95, as the balance of the credits ($244.60 less $88.-50) should be applied against that mortgage.

Plaintiff attacks the validity of the mortgages for $191.75 and $149.95, dated May 31, 1929, and October 10, 1929, respectively, and challenges their effect as concerns him, for the reason that neither was passed before a notary public and two witnesses, as required by law.

A trial of the case on these issues resulted in a judgment for intervener and against defendant for $216.10, amount sued for, and rejecting intervener's demand as against plaintiff. A rehearing was applied for by intervener and granted, and on reconsideration of the case the lower court reversed its first judgment and rendered one in favor of intervener decreeing it to be entitled to the fund in controversy. In other words, in effect, held that the chattel mortgages primed the lessor's privilege as against the property covered by said mortgages which had been seized and sold under execution. From this judgment the plaintiff prosecutes this appeal.

Mrs. D. L. Kite gave intervener three mortgages of different amounts, on different dates and payable in different installments. The first one was for $88.50. It was passed before a notary public and two witnesses and is admitted to be legal and valid. She had made ten payments of $7.30 each on this indebtedness before she incurred additional liability to intervener and gave the second mortgage to secure payment of same. After giving the second mortgage she made two more payments of $7.30 each and one for $3.00 which clearly should be imputed to the discharge of the first mortgage debt. These payments are sufficient to, and in our opinion did in fact, extinguish the first mortgage debt, and at date of the seizure in this case

the chattels included in this mortgage were free from its effects.

We think the additional payments made by Mrs. Kite to intervener should be imputed to the second mortgage debt, but the conclusions reached by us on the other issues in the case renders it unnecessary to discuss further this mortgage indebtedness.

As alleged by plaintiff, the two last mortgages given by Mrs. Kite to intervener were signed by her in the presence of two witnesses, and proved by the affidavit of one of the witnesses before a notary public.

A more serious question is presented in the issue regarding the effect, as against plaintiff, of the two mortgages in question, not passed before a notary public, as required by section 2 of Act No. 198 of 1918. This section reads as follows: " * * * In order to affect third persons without notice, said instrument must be passed by notarial act and the original or a certified copy thereof shall be recorded in the office of the Recorder of Mortgages in the parish where the property shall then be situated, and also in the parish in which the mortgagor is a resident."

In brief of counsel for intervener appears the following novel argument, viz.: "There is no law requiring a chattel mortgage to be passed before a notary public and two witnesses; but only that it shall be passed by notarial act."

He further argues that there is a difference between a notarial act and an authentic act; that the latter is one passed before a notary public, or other officer authorized to do so, in the presence of two attesting witnesses, while the former is one executed by the party or parties thereto and thereafter acknowledged before an officer, or which has been thereafter proven by one of the attesting witnesses. This argument is not entirely sound. It is correct in so far as it refers to the authentic act. Civ. Code, art. 2234.

Article 2240 of the Civil Code is a complete answer to counsel's argument that an act under private signature becomes a notarial act when proven by one of the attesting witnesses or acknowledged by the party or parties thereto: "All acts may be executed under private signature, except such as positive laws have ordained to be passed in presence of a notary."

■ To have added the words "and two witnesses" after the word "notary" would not have made the meaning clearer. In Louisiana, so far as we can recall, every sort of act that is required by law to be passed before a notary public requires two attesting witnesses for its completion, and when so executed it becomes authentic. We know that a donation inter vivos must be in authentic form. Article 1536 of the Civil Code

requires that the act be passed before a notary public and two witnesses.

■ Counsel cites article 2253 in support of his argument. This article refers only to contracts affecting real estate. It plainly states that the instrument under private signature, to affect creditors and bona fide purchasers must, before being recorded, be proved or acknowledged. When this has been done, the record of the act with the proof or acknowledgment constitutes constructive notice to creditors and bona fide purchasers. Section 2 of the Chattel Mortgage Law is exactly opposite in meaning to this article as regards the effect flowing from the record of a mortgage under private signature, whether proved or acknowledged or not, so far as third persons are concerned. Third persons must have notice of the mortgager's rights, as defined in the act under private signature, before he is affected thereby.

The identical question we are discussing was raised in the case of Union Securities Co. v. Neal, Watts, Third Opponent, reported in 9 La. App. 494, 121 So. 316, 317. In that case the plaintiff's mortgage was acknowledged by the mortgagor before a notary public and two witnesses, whereas in the present case the acts were proven by the affidavit of one of the attesting witnesses. Judge Odom, as the organ of the court, in that case, says: "On the second point urged by the seizing creditor—that is, that it had a chattel mortgage on the property seized—our conclusion is that the document on which it relies as a chattel mortgage is not effective against third persons, because it was not executed in notarial form."

■■ The notarial act referred to in the above-quoted section of the 1918 act is one signed and executed by the mortgagor before a notary public, who also signs, and two attesting witnesses. When thus executed and signed, the instrument is authentic for all purposes. The two last mortgages given by Mrs. Kite to intervener were not signed before a notary public and do not possess the self-proving qualities of a notarial act. They are not in the form required by the law of 1918.

■■ It becomes necessary to decide two more questions in this case in order to finally dispose of it. These are: (1) Was the fact of registry of the two last mortgages sufficient in itself to impress plaintiff with notice of intervener's mortgage rights against the chattels in question, and, if not, (2) on whom devolved the burden of establishing that plaintiff did not have actual notice of the existence and registry of such mortgages?

These questions have been before our courts several times. In Dainello v. McCoy, 15 La. App. 358, 131 So. 608, the Orleans Court of Appeal had occasion to pass on them. In

that case, the mortgage involved on its face showed to have been executed before a notary public, when, as a matter of fact, the notary signed it out of the presence of the mortgagor and at a different time and place. It was held that the registry of the act did not affect third persons without actual notice, and that such third persons could attack the authenticity of the recorded act. It was also held in that case that the "burden was not on one claiming landlord's lien on mortgaged automobile to show he had no knowledge of existence of chattel mortgage not signed in notary's presence."

In the very recent case of Lieber v. Watts, decided by this court, 139 So. 778, it was held that a chattel mortgage, on its face having the appearance of being an authentic act, but which, in fact, was not signed by the attesting witnesses at same time and place the notary signed, though recorded, did not provide constructive notice to third persons. The intervener in that case, as in the present case, relied on the decision in Shevnin v. Grimmer et al., 10 La. App. 393, 119 So. 894. There is conflict between that decision and the one in the Dainello Case, but this court expressly overruled the former decision in the Lieber Case.

In the case of Union Securities Co. v. Neal, Watts, Intervener, referred to above, the court held that the mortgage in question was not one which has effect against third persons without notice, "in that it is not clothed with the formalities prescribed by law." The court, by ruling that the record of said mortgage did not give notice to third persons, inferentially held that the notice which the statute intended was not constructive, but actual.

Adoption by the Legislature of the Chattel Mortgage Law was quite a departure from the old order of things with respect to personalty becoming security for debt. It was necessary that new rules be incorporated into this special law in order to make it effective to the extent that it might accomplish the purpose of its enactment. One of these special provisions is that requiring the mortgage to be passed before a notary public in order to "affect third persons without notice" of the mortgagee's rights. Contracts involving the sale of real estate become effective as against the world when filed for record, and mortgages on real estate become so effective when actually recorded. This is true simply because the law so ordains. If the Legislature desired to provide special requirements surrounding the execution and regulating the effect of chattel mortgages, it had the power to do so, and we think it did. If the simple act of registering such a mortgage, under private signature, serves to impress the world with notice of its existence, then the provision

that such acts should be passed before a notary public in order to affect third persons without notice might as well be deleted from the law. The lawmaker evidently intended to fix a rule that would protect those advancing money on the faith of a chattel mortgage as security for its payment. The court in the Dainello v. McCoy Case, in discussing the questions we are now giving attention to, used this language, which we approve, viz.: "It will be noted that third persons without notice are affected only if two essential requirements are complied with: First, the document must be by notarial act; second, the document must be properly recorded in the mortgage office. Hence it will not do to say that, if the recordation is properly made, the other essential —that the act be by notarial act—may be overlooked. What the section clearly intends is that, if a third person has actual notice that the property in question is mortgaged, his rights are affected by the mortgage whether it be executed by notarial act or under private signature, but that, if he has no actual knowledge, his rights can be affected only by a formal notarial act. * * *"

On the question of "actual knowledge" on part of plaintiff of intervener's mortgage, the record is entirely silent. Plaintiff does not assert lack of such knowledge, and intervener does not allege that plaintiff had such knowledge. We think, as did the court in Dainello v. McCoy, supra, that it devolved upon intervener to allege and prove that plaintiff had actual knowledge of the mortgage rights of intervener against the chattels described in said mortgages. Certainly plaintiff is not presumed to have had such knowledge, but, on the contrary, if there is any presumption on the point, it is in his favor that he had no such knowledge.

"Since the record is silent on the question of actual knowledge, we will assume that no such knowledge existed." Dainello v. McCoy, 15 La. App. 358, 131 So. 608, 610.

We think the first judgment of the lower court the correct one.

For the reasons herein assigned, the judgment appealed from, in so far as it decrees intervener entitled to be paid by preference and priority from the proceeds of sale of the property separately appraised and separately sold herein, and ordering Thomas R. Hughes, sheriff of Caddo parish, to pay over to intervener a sufficient amount of said fund to satisfy intervener's judgment against defendant herein, is hereby reversed, annulled, and set aside; and it is now ordered, adjudged, and decreed that plaintiff do have and recover judgment against intervener rejecting its demands and dismissing its suit as against plaintiff with costs in both courts.

It is further ordered, adjudged, and de-

creed that Thomas R. Hughes, sheriff of Caddo parish, pay over to plaintiff said proceeds of sale in his hands to an amount sufficient to satisfy plaintiff's judgment against defendant, including costs.

In all other respects the judgment appealed from is affirmed.